20-664-cv
*Havens v. James*

# In the
# United States Court of Appeals
## FOR THE SECOND CIRCUIT

AUGUST TERM 2020
No. 20-664-cv

JIM HAVENS, INDIVIDUALLY AND O/B/O ROC LOVE WILL END
ABORTION, AN UNINCORPORATED ASSOCIATION,
*Plaintiff-Appellant*,

v.

LETITIA A. JAMES, ATTORNEY GENERAL OF THE STATE OF NEW YORK,
IN HER OFFICIAL CAPACITY AS ATTORNEY GENERAL OF THE STATE OF
NEW YORK, CITY OF ROCHESTER, NEW YORK,
*Defendants-Appellees*.

On Appeal from the United States District Court
for the Western District of New York

ARGUED: SEPTEMBER 29, 2020
DECIDED: AUGUST 4, 2023

Before:     LOHIER, NARDINI, and MENASHI, *Circuit Judges*.

In 2005, a federal district court entered a permanent injunction against several pro-life advocates enjoining them from entering the public sidewalk within fifteen feet of the entrance of any abortion

clinic in the Western District of New York. Twelve years later, in 2017, Plaintiff-Appellant Jim Havens, who was not a named party to the 2005 permanent injunction, started sidewalk counseling near the Planned Parenthood facility in Rochester, New York. After Defendants-Appellees the New York Attorney General and the City of Rochester decided that Havens was bound by the 2005 permanent injunction, he sued, seeking a declaratory judgment that he was not bound by the injunction. He also moved for a preliminary injunction to prevent the defendants from applying the injunction to his counseling activities. The district court dismissed his suit for failure to state a claim and denied his motion for a preliminary injunction.

We hold that a person who is not a named party to an injunction or legally identified with a named party is bound by the injunction only from acting for the benefit of, or to assist, an enjoined party in violating the injunction. The allegations in Havens's complaint do not establish that he so acted and therefore state a claim for declaratory relief. We reverse the judgment of the district court insofar as it dismissed Havens's complaint and vacate the judgment insofar as it denied Havens's motion for a preliminary injunction. We remand for further proceedings consistent with this opinion.

Judge Lohier dissents in a separate opinion.

---

JOHN T. REFERMAT, Refermat Hurwitz Daniel PLLC, Rochester, NY, *for Plaintiff-Appellant*.

DUSTIN J. BROCKNER, Assistant Solicitor General (Barbara D. Underwood, Solicitor General, Victor Paladino, Senior Assistant Solicitor General, *on the brief*), *for* Letitia A.

2

James, Attorney General of the State of New York, Albany, NY, *for Defendant-Appellee Letitia A. James*.

SPENCER L. ASH *for* Timothy R. Curtin, Corporation Counsel of the City of Rochester, Rochester, NY, *for Defendant-Appellee City of Rochester*.

MENASHI, *Circuit Judge*:

In 2005, a federal district court entered a permanent injunction against several pro-life advocates. The "Arcara Injunction," named after the district judge who issued it, enjoined the named defendants from, among other things, entering the public sidewalk within fifteen feet of the entrance of any abortion clinic in the Western District of New York and from aiding and abetting others to do the same.

Twelve years later, in 2017, Plaintiff-Appellant Jim Havens began sidewalk counseling near the Planned Parenthood facility in Rochester, New York.[1] Havens invited others to join him, and they eventually formed an association, ROC Love Will End Abortion ("ROC").[2] Havens, who was neither a party to the Arcara Injunction nor aware of it, did not avoid the fifteen-foot buffer zone defined in the Arcara Injunction. Defendants-Appellees Letitia A. James, the Attorney General of the State of New York, and the City of Rochester, however, informed Havens that he and ROC were prohibited from

---

[1] Sidewalk counseling "involves offering information about alternatives to abortion and help pursuing those options." *McCullen v. Coakley*, 573 U.S. 464, 472 (2014).

[2] The association was initially called ROC Sidewalk Advocates for Life. In 2019, it became ROC Love Will End Abortion.

3

entering the buffer zone because he and his group were acting in concert with defendants named in the Arcara Injunction.

To clarify his rights and to avoid arrest, Havens sued the Attorney General and the City, seeking a declaration that he and his group were not subject to the Arcara Injunction. He also sought a preliminary injunction to prevent the defendants from enforcing the injunction against him and his group. Havens now appeals the district court's dismissal of his suit for failure to state a claim, its denial of his motion for a preliminary injunction, and its decision to dismiss his complaint with prejudice without granting him leave to amend.

We hold that a person who is not a named party to an injunction and who is not legally identified with such a party is bound by the injunction only from acting for the benefit of, or to assist, a named party in violating the injunction. According to the allegations in his complaint, Havens did not so act. The complaint therefore states a claim for the declaratory relief Havens seeks. Accordingly, we reverse the district court's dismissal of Havens's complaint. We vacate the district court's denial of Havens's motion for a preliminary injunction and remand for further proceedings consistent with this opinion.

## BACKGROUND

### I

In 1999, the State of New York, along with Planned Parenthood of Rochester and other abortion providers, sought injunctive relief regulating the conduct of pro-life advocates outside of abortion clinics in the Western District of New York. *New York ex rel. Spitzer v. Operation Rescue Nat'l*, 273 F.3d 184, 191-92 (2d Cir. 2001). The plaintiffs alleged that the defendants had violated the Freedom of

Access to Clinic Entrances Act of 1994 ("FACE"), which makes it unlawful for anyone who

> by force or threat of force or by physical obstruction, intentionally injures, intimidates or interferes with or attempts to injure, intimidate or interfere with any person because that person is or has been, or in order to intimidate such person or any other person or any class of persons from, obtaining or providing reproductive health services.

18 U.S.C. § 248(a)(1).

After a twenty-three-day hearing, the district court determined that the defendants had likely violated FACE by "threatening violence, engaging in minor acts of violence, and imposing a 'constructive obstruction' that amounted to physical obstruction." *Operation Rescue Nat'l*, 273 F.3d at 192. The district court issued a preliminary injunction in 2002, which was converted into a permanent injunction in 2005.[3] The Arcara Injunction enjoined conduct beyond what FACE prohibits: it enjoined the defendants from "being present within fifteen feet of either edge of any doorway, walkway or driveway entrance to any" abortion facility and from "inducing, directing, aiding or abetting in any manner, others to take any of the actions described" in the injunction. App'x 21-22. The injunction listed the parties it bound, including Mary Melfi (now Mary Jost), Michael McBride, Robert Pokalsky, and Rescue Rochester, an organization led by Michael Warren.

In 2017, Havens started to sidewalk counsel and pray outside Planned Parenthood of Rochester. Havens invited others to join him,

---

[3] Order, *New York ex rel. Spitzer v. Operation Rescue Nat'l*, No. 99-CV-209A (W.D.N.Y. Oct. 31, 2005), ECF No. 200.

and they eventually formed ROC. Using materials that he acquired from Sidewalk Advocates for Life, a national sidewalk counseling support group, Havens offered training sessions to people interested in sidewalk counseling. The training described non-violent and non-confrontational methods of initiating conversations with women to discuss options other than abortion. Some of the training sessions were held at Focus Pregnancy Help Center, a pregnancy center with which Jost is associated.[4]

In the latter part of 2017, security guards at Planned Parenthood of Rochester told Havens that the Arcara Injunction required him—and anyone with him—to observe a fifteen-foot buffer zone on the public sidewalk. Havens, who was not a party to the injunction and had not been aware of it, reviewed the terms of the

---

[4] The complaint alleges that Jost "participates" in Focus Pregnancy Help Center. App'x 13. In her opposition to Havens's motion for a preliminary injunction, the Attorney General submitted a copy of Focus Pregnancy Help Center's "About Us" webpage, which indicated that Jost founded the center. App'x 94. The Attorney General argues that, even though we are considering a motion to dismiss, we may take judicial notice of the contents of the center's webpage. We do not agree. In prior cases, we have taken judicial notice only of official government websites to determine facts that were not central to the dispute. *See, e.g.*, *United States v. Akinrosotu*, 637 F.3d 165, 168 (2d Cir. 2011) (taking judicial notice of "the official website for the Bureau of Prisons … for the limited purpose of obtaining the BOP's projected date for the defendant's release from prison"). Not every website is a "source[] whose accuracy cannot reasonably be questioned," Fed. R. Evid. 201(b)(2), and it is generally inappropriate for a court to rely on internet research when considering a motion to dismiss. "[W]e are limited on a motion to dismiss" to "the allegations of the complaint." *Nunes v. CNN, Inc.*, 31 F.4th 135, 142 (2d Cir. 2022). Regardless, Jost's specific role at Focus Pregnancy Help Center does not affect our decision in this case.

injunction. He disagreed with the security guards' assessment and continued his sidewalk counseling activities.

On several occasions in 2017 and 2018, Planned Parenthood of Rochester security guards called the Rochester Police Department to complain that Havens was violating the fifteen-foot buffer zone imposed by the Arcara Injunction. The Rochester Police, after visiting the location and consulting Havens, agreed with Havens that he and those with him were not bound by the Arcara Injunction. But in June 2018, the Rochester Police Department reversed its position and insisted that Havens and ROC were bound by the Arcara Injunction. The police "verbally informed" Havens that he and his group had to comply with the fifteen-foot buffer zone. App'x 6.[5]  Havens and ROC followed the directive despite its adverse impact on their ability to engage in sidewalk counseling.

Havens's lawyers wrote to the City of Rochester to explain their view that Havens and ROC were not bound by the Arcara Injunction. On September 6, 2018, the City responded by letter that Havens and ROC were not bound by the injunction "[s]o long as police do not have reason to believe that Mr. Havens and his organization are acting in concert with any named defendants." App'x 11.

Any reprieve that letter afforded was short-lived. Two weeks later, in a joint letter to Havens, the City and the Attorney General stated that they had reviewed evidence that Havens and ROC were acting in concert with defendants named in the Arcara Injunction and accordingly needed to remain outside the buffer zone. The letter did

[5] In April 2019, while Havens and his group were sidewalk counseling outside the buffer zone, the Rochester Police handed him a stack of letters to pass out to his group. The letter warned that failure to comply with the Arcara Injunction could result in "arrest[] for criminal contempt." App'x 38.

7

not identify the named parties with whom Havens and ROC were purportedly acting in concert or describe the evidence that the City and the Attorney General had reviewed.

Havens's lawyers requested additional information. The Attorney General responded by letter, stating that certain evidence established that Havens and ROC coordinated their activities with Jost and Rescue Rochester, two defendants named in the Arcara Injunction. The Attorney General did not explain how Havens and ROC had acted in concert with Jost and Rescue Rochester or identify the evidence that the Attorney General had reviewed.

Havens alleges that a news reporter provided him with the evidence on which the City and the Attorney General relied. That evidence included (1) Facebook posts by Rescue Rochester and by Havens that promoted training sessions at Focus Pregnancy Help Center and (2) a mailing from Rescue Rochester and a website post by Focus Pregnancy Help Center that encouraged participation in Havens's and ROC's monthly sidewalk counseling outside Planned Parenthood of Rochester.

Havens also alleges that McBride, Pokalsky, and Warren engaged in sidewalk counseling at Planned Parenthood of Rochester. According to his complaint, Havens consulted with counsel and then informed the three individuals that, as named parties to the injunction, they must avoid entering the buffer zone.

## II

On July 2, 2019, Havens, individually and on behalf of ROC, sued the Attorney General and the City. Havens sought a declaration that the Arcara Injunction does not bind him, ROC, or its members and an order enjoining the defendants from enforcing the injunction

against them.[6] At the same time, Havens moved for a preliminary injunction. The defendants each opposed the motion and moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6).

The district court granted the defendants' motions to dismiss, denied Havens's motion for a preliminary injunction, and dismissed the complaint with prejudice. The district court concluded that Havens, although not a party to the Arcara Injunction, gave "benefit[]" to several named parties and was therefore "in active concert or participation" with those parties when he "sidewalk counseled" within the fifteen-foot buffer zone. *Havens*, 435 F. Supp. 3d at 507-08. In holding that Havens was "bound by the terms of the Arcara Injunction," the district court rejected Havens's argument that he did not aid and abet a named party's violation of the Arcara Injunction. *Id.*

The district court then denied as moot Havens's motion for a preliminary injunction. *Id.* at 508. The district court further held that even if the motion were not moot it would be "meritless" because the "face of the complaint clearly demonstrates the great lengths to which

---

[6] Havens also requested nominal damages pursuant to 42 U.S.C. § 1983. App'x 6, 17. The district court did not address the damages claim but explained that the request "for declaratory and injunctive relief boils down to one question: whether [the] plaintiffs are 'persons bound' by the Arcara Injunction." *Havens v. James*, 435 F. Supp. 3d 494, 503 (N.D.N.Y. 2020). We agree with the district court that the sufficiency of Havens's complaint as to all three remedies—a declaratory judgment, an injunction, and nominal damages—turns on whether he is bound by the Arcara Injunction. There is no question that the defendants are state actors and that preventing Havens from sidewalk counseling, if he is not bound by the Arcara Injunction, would violate his constitutional rights. For the reasons that follow, we conclude that Havens's complaint is sufficient with respect to the three requested remedies.

[Havens] and enjoined parties went to coordinate their efforts to violate the Arcara Injunction." *Id.* at 508-09.

This appeal followed.

## DISCUSSION

This case requires us to clarify the circumstances in which an injunction may be applied to someone who is not a party to the injunction. We hold that a person who is not a named party to an injunction and who is not legally identified with a named party is bound by the injunction only from acting for the benefit of, or to assist, a named party in violating the injunction.

## I

We have long recognized that "no court can make a decree which will bind any one but a party" because a court's "jurisdiction is limited to those over whom it gets personal service, and who therefore can have their day in court." *Alemite Mfg. Corp. v. Staff*, 42 F.2d 832, 832-33 (2d Cir. 1930) (L. Hand, J.); *see also Whole Woman's Health v. Jackson*, 142 S. Ct. 522, 535 (2021) ("Consistent with historical practice, a federal court exercising its equitable authority may enjoin named defendants from taking specified unlawful actions. But under traditional equitable principles, no court may lawfully enjoin the world at large.") (internal quotation marks omitted). The principle that "everyone should have his own day in court" is "fundamental" and "part of our deep-rooted historic tradition." *Richards v. Jefferson County*, 517 U.S. 793, 797-98 (1996) (internal quotation marks omitted).[7]

---

[7] *See also Hansberry v. Lee*, 311 U.S. 32, 40 (1940) ("It is a principle of general application in Anglo-American jurisprudence that one is not bound by a judgment in personam in a litigation in which he is not designated as a

For that reason, "[c]ourts have carefully distinguished between entering an injunction against a non-party, which is forbidden, and holding a non-party in contempt for aiding and abetting in the violation of an injunction that has been entered against a party, which is permitted." *Additive Controls & Measurement Sys., Inc. v. Flowdata, Inc.*, 96 F.3d 1390, 1395 (Fed. Cir. 1996). Accordingly, "the only occasion when a person not a party may be punished" for contempt is when "he has helped to bring about … an act of a party." *Alemite*, 42 F.2d at 833. The nonparty must either be "legally identified" with the enjoined party or "abet" the enjoined party's violation of the injunction. *Id*. By contrast, a court may not "punish[] the conduct of persons who act independently and whose rights have not been adjudged" in the earlier proceeding. *Regal Knitwear Co. v. NLRB*, 324 U.S. 9, 13 (1945); *Chase Nat'l Bank v. City of Norwalk*, 291 U.S. 431, 437 (1934) (same).

These principles inform our understanding of Federal Rule of Civil Procedure 65(d), which provides that an injunction binds the parties to the injunction; their officers, agents, and employees acting in that capacity; and those "who are in active concert or participation" with the enjoined parties to violate the injunction. Fed. R. Civ. P. 65(d)(2). Rule 65(d) "codified the common law rules the court set forth in *Alemite*." *Additive Controls*, 96 F.3d at 1395; *see Reich v. Sea Sprite Boat*

party or to which he has not been made a party by service of process."); *Baker v. Baker, Eccles & Co.*, 242 U.S. 394, 403 (1917) ("The fundamental requisite of due process of law in judicial proceedings is the opportunity to be heard. To hold one bound by the judgment who has not had such opportunity is contrary to the first principles of justice.") (citations omitted); *Osborn v. Bank of the United States*, 22 U.S. 738, 802 (1824) (argument of Mr. Wright) ("An injunction binds no person but the parties to the suit."); *Fellows v. Fellows*, 4 Johns. Ch. 25 (N.Y. Ch. 1819) ("[Y]ou cannot have an injunction, except against a party to the suit.").

*Co.*, 50 F.3d 413, 417 (7th Cir. 1995) (Easterbrook, J.) ("Rule 65(d) simply restates a norm of federal equity practice.").[8] Thus, "Rule 65(d)(2) does not really add or detract from the range of persons that were bound by a decree under basic equity practice and due-process principles applied on the equity side of the federal courts prior to 1938."[9] The "essence" of the rule "is that defendants may not nullify a decree by carrying out prohibited acts through aiders and abettors, although they were not parties to the original proceeding." *Regal Knitwear*, 324 U.S. at 14; *see also Next Invs., LLC v. Bank of China*, 12 F.4th 119, 134 (2d Cir. 2021) ("The relevant inquiry under Rule 65(d) is whether the nonparty … aided or abetted the [enjoined parties'] violations of the court's orders."). "Aiding and abetting a party is not acting independently." *Eli Lilly & Co. v. Gottstein*, 617 F.3d 186, 193 (2d Cir. 2010).

Under an aiding-and-abetting theory, a court must first conclude that "the party subject to the court's mandate committed

---

[8] *See also Dr.'s Assocs., Inc. v. Reinert & Duree, P.C.*, 191 F.3d 297, 303 (2d Cir. 1999) ("We conclude that the district court's injunction was not authorized by Rule 65(d) because the injunction bars the nonparty appellants from prosecuting lawsuits that do not aid or abet the federal defendants in violating the injunctions entered against them.").

[9] 11A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 2956 (3d ed. 2022). To read Rule 65(d) in any other way "might be a violation of the Rules Enabling Act, which provides that a federal rule 'shall not abridge, enlarge, or modify any substantive right.'" *Id.* (footnote omitted) (quoting 28 U.S.C. § 2072; *see also Grupo Mexicano de Desarrollo, S.A. v. All. Bond Fund, Inc.*, 527 U.S. 308, 322 (1999) ("Notwithstanding the fusion of law and equity by the Rules of Civil Procedure, the substantive principles of Courts of Chancery remain unaffected.") (quoting *Stainback v. Mo Hock Ke Lok Po*, 336 U.S. 368, 382 n.26 (1949)); *Alemite*, 42 F.2d at 832 (citing *Seaward v. Paterson*, [1897] 1 Ch 545).

contempt." *Levin v. Tiber Holding Corp.*, 277 F.3d 243, 250 (2d Cir. 2002); *see id.* ("The district court erroneously held that [the nonparty] aided and abetted a violation of the court order without reaching the predicate question of whether [the party] itself committed contempt."); *see also Alemite*, 42 F.2d at 833 ("[I]f the [party] is not involved in the contempt, the [nonparty] cannot be; the decree has not been disobeyed.").

A court must next conclude that "the challenged action" of the nonparty "was taken for the benefit of, or to assist, a party subject to the decree" in violating the injunction. *Arista Records, LLC v. Tkach*, 122 F. Supp. 3d 32, 36 (S.D.N.Y. 2015) (Nathan, J.) (quoting *Adcor Indus., Inc. v. Bevcorp, LLC*, 411 F. Supp. 2d 778, 794 (N.D. Ohio 2005)); *Spin Master Ltd. v. 158*, 463 F. Supp. 3d 348, 380 (S.D.N.Y. 2020) (same); *see also NML Capital, Ltd. v. Republic of Argentina*, 727 F.3d 230, 243 (2d Cir. 2013) ("Every injunction issued by a district court automatically forbids others … from assisting in a violation of the injunction."); *Goya Foods, Inc. v. Wallack Mgmt. Co.*, 290 F.3d 63, 75 (1st Cir. 2002) (observing that, to subject a nonparty who "aids or abets an enjoined party in transgressing a court order," it is "essential" that "the challenged action must be taken for the benefit of, or to assist, a party subject to the decree"); *Additive Controls*, 154 F.3d at 1353 ("Non-parties are subject to contempt sanctions if they act with an enjoined party to bring about a result forbidden by the injunction.").[10] The

---

[10] *See also* Note, *Binding Nonparties to Injunction Decrees*, 49 MINN. L. REV. 719, 724 (1965) ("Although the aider or abettor may not act on the order of the party-defendant, he resembles an agent to the extent that he acts for the benefit of the party-defendant and therefore lacks an independent interest in the merits of the injunction. Given this legal identity of interests, there is no reason to deny the plaintiff a civil remedy against the aider or abettor as well as the party-defendant."). The district court acknowledged the appropriate standard. *See Havens*, 435 F. Supp. 3d at 504 ("Non-parties thus

enjoined party must, in essence, be the principal or the intended beneficiary of the nonparty's conduct. Only when the nonparty acts to benefit or to assist the enjoined party can it be said that the nonparty does not "act independently," *Regal Knitwear*, 324 U.S. at 13-14, such that the judicial power may properly enjoin the nonparty on the "assumption that the named defendant [was] an adequate representative of the rights" of the nonparty in the original proceeding, *Spin Master*, 463 F. Supp. 3d at 380 (quoting WRIGHT, MILLER & KANE, *supra* note 9, § 2956).

In *Alemite*, for example, we explained that "an employee who refused to move cars of the defendant railway after a mandatory injunction had directed it to accept those of another [rail]road" was properly held in contempt because his refusal was "imputed" to his employer, the enjoined defendant. 42 F.2d at 833 (describing *Ex parte Lennon*, 166 U.S. 548 (1897)). But if the same person "had not been in the defendant's employ" or "if his act had been without the scope of his authority," he "would have escaped" contempt because "it is not the act described which the decree may forbid, but only that act when the defendant does it." *Id.* In other words, the employee could be held in contempt for violating the injunction only insofar as he acted to benefit or to assist the railway. *See Additive Controls*, 96 F.3d at 1395 ("The court [in *Alemite*] … concluded that the non-party, Joseph Staff, could be held in contempt of the injunction against his former employer (the enjoined party) if, but only if, Staff aided and abetted

_____

act in 'concert or participation' with enjoined parties where they have 'actual knowledge of the judicial decree and violated it, and ... the challenged action was taken for the benefit of, or to assist, a party subject to the decree.'") (quoting *Arista Records*, 122 F. Supp. 3d at 36).

14

his former employer in violating the injunction.").[11] The difference between acting to "knowingly assist[]" an enjoined party and acting independently is not "a formal distinction" but "goes deep into the powers of a court of equity." *Alemite*, 42 F.2d at 833; *see also Additive Controls*, 96 F.3d at 1395-96 ("Having a relationship to an enjoined party of the sort set forth in Rule 65(d) exposes a non-party to contempt for assisting the party to violate the injunction, but does not justify granting injunctive relief against the non-party in its separate capacity.").

The Attorney General and the City argue that we should not consider whether the nonparty acted to benefit or to assist the enjoined party in violating the injunction when deciding whether the nonparty acted "in active concert or participation." The defendants rely on two cases in which we said that Rule 65(d)'s active-concert prong is "directed to the actuality of concert or participation, without regard to the motives that prompt the concert or participation." *N.Y.*

---

[11] *See also New York v. Operation Rescue Nat'l*, 80 F.3d 64, 70 (2d Cir. 1996) ("An injunction issued against a corporation or association binds the agents of that organization to the extent they are acting on behalf of the organization. Generally, persons who cease to act in one of the designated capacities are no longer bound by the decree.") (citation omitted); *Cassidy v. Puett Elec. Starting Gate Corp.*, 182 F.2d 604, 607 (4th Cir. 1950) ("[A]n injunction or enjoining order … restrain[s] the officers from doing the act prohibited in their official capacity as an officer of the corporation, *or in their individual capacity, for the benefit or in the interest of the corporation enjoined*.") (quoting *Mex. Ore Co. v. Mex. Guadalupe Mining Co.*, 47 F. 351, 356-57 (C.C.D.N.J. 1891)); *Hoover Co. v. Exch. Vacuum Cleaner Co.*, 1 F. Supp. 997, 998 (S.D.N.Y. 1932) (noting that "an officer or agent who has severed altogether his connection with" the enjoined corporation "does not violate the injunction by doing the act himself" because "there is no restraint upon the officer or agent personally, but only as the representative of the enjoined defendant").

*State Nat'l Org. for Women v. Terry*, 961 F.2d 390, 397 (2d Cir. 1992), *judgment vacated sub nom. Pearson v. Planned Parenthood Margaret Sanger Clinic (Manhattan)*, 507 U.S. 901 (1993); *Eli Lilly*, 617 F.3d at 193. The defendants' reliance is misplaced; our decision is fully consistent with those cases.

In *Terry* and *Eli Lilly*, we rejected the argument that a nonparty could avoid Rule 65(d) because he had his own motivation for assisting an enjoined party. But we did not remove the requirement that the nonparty must act *to assist* the named party's violation of the injunction.[12]

The respondents in *Terry*, who were not named in the relevant injunction, joined a demonstration that was "initiated and coordinated by" a party expressly enjoined from doing so. 961 F.2d at

---

[12] It is well established that the "motives" that prompt one's conduct are not the same as the mental state associated with that conduct. The criminal law distinguishes between motive, on the one hand, and "intent (or purpose)," on the other. 1 WAYNE R. LAFAVE, SUBSTANTIVE CRIMINAL LAW § 5.2 (3d ed. 2021); 22 C.J.S. *Criminal Law: Substantive Principles* § 34 (2022) ("Motive, which in criminal law is that which leads or tempts the mind to indulge in a criminal act, or the cause or reason that induces a person to commit a crime, *and which should be distinguished from, and not confused with, intent*, is not an essential element of a crime.") (emphasis added) (footnotes omitted); *see Rosemond v. United States*, 572 U.S. 65, 88 (2014) (Alito, J., concurring in part and dissenting in part) ("Common-law commentators recognized th[e] elementary distinction between intent and motive."); Carissa Byrne Hessick, *Motive's Role in Criminal Punishment*, 80 S. CAL. L. REV. 89, 94 (2006) ("[T]he conventional criminal law wisdom states that 'motive is irrelevant.' Criminal liability is concerned only with a defendants' intentions, not with her motives.") (citing JEROME HALL, GENERAL PRINCIPLES OF CRIMINAL LAW 153 (1947)). In *Terry* and *Eli Lilly*, we said that if a nonparty acted to assist an enjoined party in violating a judicial decree, the nonparty's motive is irrelevant.

394. We said that the relevant inquiry regarded the "actuality of concert or participation," not "the motives that prompt the concert or participation." *Id.* at 397. And on those facts, it was clear that the respondents acted to assist the named party in successfully holding the demonstration it was enjoined from organizing, so the respondents had been in active concert or participation with the named party. It did not matter, we said, that the respondents may have been "independently motivated by their political, social and moral positions" to assist the enjoined party. *Id.* (internal quotation marks omitted).

In *Eli Lilly*, a court order prevented David Egilman from releasing confidential medical documents with a few narrow exceptions, including via subpoena. Egilman arranged with "an Alaskan attorney and an advocate for patients' rights," James Gottstein, to subpoena Egilman to release those documents. 617 F.3d at 190. When the two men spoke, Gottstein "[u]nderst[ood] that Egilman would not produce the … documents except pursuant to a subpoena," and Egilman "knew that Gottstein intended to distribute the … documents when he obtained them." *Id.* at 191. "After talking to Egilman about [the] confidential documents and their mutual desire to see those materials disseminated to the public, Gottstein intervened in an unrelated case" and issued a subpoena to Egilman—calculated to obtain the documents—within hours of the intervention. *Id.* at 190. We noted that "[t]he district court's finding that Gottstein conspired with Egilman to violate [the court order] is amply supported by the record." *Id.* at 191. Because there was "no question that Gottstein and Egilman were in close contact with one another and strategized how best to facilitate the dissemination of documents protected by [the order]," we determined that Gottstein "plann[ed] an end run around the protective order." *Id.* at 192.

Given this evidence of coordination, we described as unavailing Gottstein's attempt to justify his conduct as "act[ing] independently as a lawyer in the interests of his client." *Id.* at 193. We explained that "the record does not support a finding that Gottstein acted independently of Egilman, which is the end of the matter." *Id.* Thus, we distinguished between a nonparty's motives, on the one hand, which are irrelevant to the question of aiding and abetting, and the necessary inquiry into whether the nonparty was "acting independently" or was aiding and abetting a named party, on the other. *Id.* Because "Gottstein schemed with Egilman to bypass the protective order," we held that he "aided and abetted the latter's violation of the same," and "[a]iding and abetting a party is not acting independently" even if one has one's own motives for doing so. *Id.* at 192-93.

Nothing in *Terry* or *Eli Lilly* conflicts with the rule that a nonparty acts "in active concert or participation" with an enjoined party only when the nonparty's "challenged actions" were "taken for the benefit of, or to assist, a party subject to the decree" in violating the injunction. *Arista Records*, 122 F. Supp. 3d at 36. To the contrary, in both cases we relied on evidence that the nonparty had aided and abetted the enjoined party to violate the injunction.[13] The sentence on

---

[13] The elements of criminal aiding and abetting parallel the requirements of Rule 65(d). *Cf. Twitter, Inc. v. Taamneh*, 143 S. Ct. 1206, 1220 (2023) (noting that "'aiding and abetting is an ancient criminal law doctrine' that has substantially influenced its analog" in the civil context of tort) (alteration omitted) (quoting *Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 181 (1994)). Those elements are "the commission of the underlying offense by someone, a voluntary act or omission, and a specific intent that such act or omission promote the success of the underlying criminal offense." *United States v. Perry*, 643 F.2d 38, 46 (2d Cir. 1981); LAFAVE, *supra* note 12, § 13.2 ("It may generally be said that one is liable as

18

which the defendants rely means only that if a nonparty aids and abets such a violation, "the motives that *prompt* the concert or participation" do not excuse it. *Eli Lilly*, 617 F.3d at 193 (emphasis added); *see also* Hessick, *supra* note 12, at 94 ("A bad motive does not establish liability, and a good motive, standing alone, is not a defense to most crimes.").

The dissenting opinion would hold that a nonparty need not act for the benefit of or to assist an enjoined party in violating the injunction in order to be bound by the injunction against the enjoined party. In doing so, the dissenting opinion disagrees even with the district court in this case, which itself explained that a nonparty aids and abets an enjoined party when the nonparty's action "was taken for the benefit of, or to assist, a party subject to the decree." *Havens*, 435 F. Supp. 3d at 504 (quoting *Arista Records*, 122 F. Supp. 3d at 36). Instead, the dissenting opinion would instruct courts to "watch what the[] [nonparties] do." *Post* at 5. That begs the question of what a court should be looking for when it examines what the nonparty did. We

an accomplice to the crime of another if he (a) gave assistance or encouragement or failed to perform a legal duty to prevent it (b) with the intent thereby to promote or facilitate commission of the crime."). The similarity to criminal aiding and abetting makes sense in light of the historical practice in which aiding and abetting the violation of an injunction subjected the aider and abettor to criminal rather than civil liability. In early cases, "the aider or abettor [was] liable for criminal contempt for flouting the authority of the court, but not for civil contempt for breach of the injunction." Note, *supra* note 10, at 723; *see Seaward*, 1 Ch at 555-56 ("In the one case the party who is bound by the injunction is proceeded against for the purpose of enforcing the order of the Court for the benefit of the person who got it. In the other case the Court will not allow its process to be set at naught and treated with contempt."). In this case, Havens was threatened with arrest for criminal contempt. *See supra* note 5.

19

have held repeatedly that the nonparty must have been "[a]iding and abetting a party" rather than "acting independently." *Eli Lilly*, 617 F.3d at 193. We do not believe a nonparty can be said to be aiding and abetting a party if he did not act for the benefit of or to assist the party in a violation. The dissenting opinion would depart from these precedents to hold that a nonparty may be bound by an injunction even when the nonparty did not so act. That would expand the equity power so broadly "as to make punishable the conduct of persons who act independently and whose rights have not been adjudged according to law," *Regal Knitwear*, 324 U.S. at 13, and who have "had no day in court," *Alemite*, 42 F.2d at 833.[14]

## II

A nonparty acts "in active concert or participation" if the nonparty aids and abets an enjoined party's violation of the injunction, which requires showing that the challenged action was taken for the benefit of, or to assist, a party subject to the decree in

---

[14] *Cf. Twitter*, 143 S. Ct. at 1220-21 ("Importantly, the concept of 'helping' in the commission of a crime—or a tort—has never been boundless. That is because, if it were, aiding-and-abetting liability could sweep in innocent bystanders as well as those who gave only tangential assistance. … [C]ourts have long recognized the need to cabin aiding-and-abetting liability to cases of truly culpable conduct."). The dissenting opinion cites an illustration from the Second Restatement of Torts for the proposition that it does not matter whether the aider and abettor acted to benefit or to assist the tortfeasor when he encouraged the tortious conduct. *See post* at 8 (citing Restatement (Second) of Torts § 876(b) cmt. d, illus. 4 (Am L. Inst. 1979)). But the Restatement makes clear that this encouragement results in liability because it "operates as a moral support to a tortfeasor" and can be a "substantial factor in causing the resulting tort," making the encourager "responsible for the consequences of the other's act." Restatement (Second) of Torts § 876(b) cmt. d. In other words, whatever the encourager's motive for doing so, he acts to assist the tortfeasor in accomplishing the tort.

violating it. One allegation in the complaint suggests a connection between Havens and a party to the Arcara Injunction: Havens held sidewalk counseling trainings at Focus Pregnancy Help Center, an organization with which Jost is associated. This allegation is not enough to conclude that Havens entered the buffer zone for the benefit of, or to assist, Jost in her own violation of the Arcara Injunction. Thus, the district court erred in dismissing Havens's complaint.

## A

When reviewing a motion under Rule 12(b)(6), "the only facts to be considered are those alleged in the complaint, and the court must accept them, drawing all reasonable inferences in the plaintiff's favor, in deciding whether the complaint alleges sufficient facts to survive." *Doe v. Columbia Univ.*, 831 F.3d 46, 48 (2d Cir. 2016). The court's function is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." *Festa v. Loc. 3 Int'l Brotherhood of Elec. Workers*, 905 F.2d 35, 37 (2d Cir. 1990). The district court departed from its role at the motion-to-dismiss stage by impermissibly drawing inferences against Havens.

The district court first found that Jost and Rescue Rochester promoted Havens's activities. *Havens*, 435 F. Supp. 3d at 505-06. But Havens did not allege that. He alleged only that he was told by a news reporter that the Attorney General had evidence to that effect. In fact, Havens put the entire allegation in quotation marks because the language is a direct quotation from an email he received from the reporter.

The Attorney General argues that because Havens failed to challenge the accuracy of the reporter's descriptions in the district

21

court, he cannot do so on appeal. Yet on a Rule 12(b)(6) motion, Havens was not obliged to deny the veracity of somebody else's statement; such a motion must be decided by reference only to Havens's own allegations. *See Festa*, 905 F.2d at 37. The Attorney General further suggests that Havens conceded the truth of the reporters' statements. Not so. In his opposition to the defendants' motion to dismiss, Havens described the reporter's statements as "what defendants claim as their basis for asserting that plaintiffs are bound by the injunction."[15] The "concession" on which the Attorney General relies is an argument that Havens made in the alternative—that, even if the district court were to accept the second-hand reports as true, it would still be insufficient to show that he acted in active concert with the enjoined parties to violate the injunction.[16]

The district court also inferred from the complaint that Havens protested "shoulder to shoulder" with McBride and Pokalsky and that Warren "coordinate[s] his efforts to sidewalk counsel" with

---

[15] Memorandum in Opposition at 6 n.2, *Havens v. James*, 435 F. Supp. 3d 494 (W.D.N.Y. 2019) (No. 19-CV-6482), ECF No. 11.

[16] We agree with that alternative argument. Havens cannot be bound by the Arcara Injunction on the basis that Jost and Rescue Rochester promoted his activities. The Arcara Injunction does not expressly prohibit Jost and Rescue Rochester from promoting sidewalk counseling, and on a motion to dismiss—making all inferences in favor of the plaintiff—we cannot conclude that making supportive Facebook posts amounts to aiding and abetting. But regardless of whether the promotion is a violation by the enjoined parties, the complaint does not establish that Havens either assisted or encouraged Jost's and Rescue Rochester's promotion of his activities. *See Alemite*, 42 F.2d at 833 ("[T]he only occasion when a person not a party may be punished[] is when he has helped to bring about … an act of a party."). Havens cannot be bound to an injunction by the unilateral act of an enjoined party.

Havens. *Havens*, 435 F. Supp. 3d at 506. The district court's inference was far from the only reasonable one; it was not even a reasonable inference. The sole allegation in Havens's complaint that related to these individuals is that they sidewalk counseled at Planned Parenthood of Rochester and that Havens advised them that they must abide by the Arcara Injunction. Construing the complaint in the light most favorable to Havens—as a court is required to do at the motion-to-dismiss stage—the allegation is that Havens separated himself from these individuals as he engaged in his protest activities, not that he coordinated with them. The district court's inference relied in part on the observation that Havens "d[oes] not affirmatively allege" that McBride's, Pokalsky's, and Warren's sidewalk counseling "was done independent of [Havens's] own sidewalk counseling." *Id.* This was also an error: an "affirmative conclusion" cannot be drawn from "an apparent omission." *Menaker v. Hofstra Univ.*, 935 F.3d 20, 35 (2d Cir. 2019).

**B**

In the end, the only relevant *admitted* fact alleged in Havens's complaint is that Havens held trainings at a facility associated with Jost. Based on this allegation, the Attorney General argues that Havens acted "in active concert or participation" with Jost.

The Attorney General identifies only one violation of the Arcara Injunction that Havens might have impermissibly facilitated: Jost's aiding and abetting Havens's own sidewalk counseling in the buffer zone.[17] The Attorney General's theory is that Havens—by

---

[17] Before the district court, the Attorney General said that no violation by an enjoined party had been established. *See* App'x 158 ("[I]f the Court were to agree that we would need an actual violation of the 2005 injunction, we are not at that point here."). The Attorney General argued that if holding

holding a training at a facility with which Jost is associated—aided and abetted Jost to aid and abet Havens's own entry into the buffer zone. The Attorney General can make this recursive aiding-and-abetting argument because the Arcara Injunction prohibits named parties not only from engaging in their own conduct but also from aiding and abetting other individuals to engage in the specified conduct—conduct that, in the case of those individuals, is lawful. *See* App'x 22-23 (providing that the named defendants are "further enjoined and restrained from inducing, directing, aiding or abetting in any manner, others to take any of the actions described ... above").

We disagree that Rule 65(d) extends to nonparties in that manner. Moreover, even if the Attorney General's recursive theory were viable, the allegations in Havens's complaint do not demonstrate that Havens aided and abetted Jost to aid and abet Havens.

## 1

The Attorney General's recursive theory of aiding and abetting is inconsistent with Rule 65(d) and the principles of equity it codified. As *Alemite* explains, "it is not the act described which the decree may

---

Havens to be in active concert required a predicate violation by an enjoined party, then there would be "a ripeness problem" because "there was [no] violation here." App'x 160. This sort of "concession ordinarily precludes a party from advancing a different argument on appeal." *Lenzi v. Systemax, Inc.*, 944 F.3d 97, 109 (2d Cir. 2019). We nevertheless consider the Attorney General's argument on appeal, which assumes that Jost violated the injunction. In any event, we disagree that the case was unripe. Even if no enjoined party had violated the injunction, Havens was restricted from sidewalk counseling within the fifteen-foot buffer zone. That injury would cause him to "endure hardship if decision is withheld." *In re Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation*, 725 F.3d 65, 110 (2d Cir. 2013).

24

forbid, but only that act when the defendant does it." 42 F.2d at 833. In other words, only a named party's actions may be enjoined, and it is therefore the named party who must be the principal and moving force of the proscribed conduct. *See Lindland v. U.S. Wrestling Ass'n, Inc.*, 227 F.3d 1000, 1006 (7th Cir. 2000) (Easterbrook, J.) ("The 'active concert or participation' clause is designed to prevent what may well have happened here: the addressee of an injunction … persuades a friendly third party to take steps that frustrate the injunction's effectiveness."). But when the proscribed conduct is aiding and abetting a nonparty, the named party cannot be the principal actor. *See United States v. Williams*, 341 U.S. 58, 64 (1951) ("Aiding and abetting means to assist the perpetrator of the crime."); *Twitter*, 143 S. Ct. at 1229 (identifying "the essence of aiding and abetting: participation in another's wrongdoing that is both significant and culpable enough to justify attributing the principal wrongdoing to the aider and abettor"). The Arcara Injunction prohibits named parties from aiding and abetting nonparties to engage in certain conduct, but the injunction cannot thereby prohibit the nonparties from engaging in that conduct. If merely receiving aid from Jost were enough to render Havens unable to enter the buffer zone, he as a nonparty effectively *would* be forbidden from engaging in "the act described." *Alemite*, 42 F.2d at 833.

We rejected a similar theory in *Doctor's Associates*. In that case, the district court sought to apply its injunction to nonparties because, in its view, the named parties were "agents or servants" of the nonparties. *Doctor's Assocs.*, 191 F.3d at 304. We disagreed that Rule 65(d) allowed that result. It was "one thing for an injunction against a principal also to bind the principal's agents or servants" but "quite different for an injunction against an agent or servant also to bind the principal." *Id.* Because "the servant does not control the principal,"

we did not understand the district court to "have the power to bind [the principal] through an order directed against her servant." *Id.*

In this case, according to the Attorney General, Jost violated the injunction by "aiding and abetting" Havens. If so, Jost was acting as the agent to Havens as principal. Rule 65(d) does not permit Havens to be held in contempt for being aided and abetted. "[T]he mere fact of an employer/employee, master/servant, or principal/agent relationship, without more, does not necessarily satisfy the standard of 'persons in active concert,' at least where the consequence would be to extend the injunction to cover the dominant party." *Id.* at 304 n.5. If Rule 65(d) extended an injunction over an agent to the dominant party, "one would never need to obtain jurisdiction over a principal in order to obtain a binding injunction over her." *Id.*

The Attorney General argues that because the Arcara Injunction proscribes "aiding and abetting," Havens could have "assisted" Jost in the offense of "aiding and abetting." But aiding and abetting itself "does not constitute a discrete criminal offense." *United States v. Delgado*, 972 F.3d 63, 75 (2d Cir. 2020) (quoting *United States v. Smith*, 198 F.3d 377, 383 (2d Cir. 1999)). "[W]hen a person is charged with aiding and abetting the commission of a substantive offense, the crime charged is the substantive offense itself." *Id.* (alteration omitted) (quoting *United States v. Oates*, 560 F.2d 45, 55 (2d Cir. 1977)). For that reason, "[o]ne cannot aid and abet an aider and abettor." *United States v. Verners*, 53 F.3d 291, 295 n.2 (10th Cir. 1995); *see also United States v. Doig*, 950 F.2d 411, 415 (7th Cir. 1991) ("[I]t is logically inconsistent to hold a corporation criminally liable because of the acts of its agent, and, at the same time to hold the agent liable for aiding and abetting the corporation."). The Attorney General has not produced a single case in which we have recognized a category of aiders and abettors of aiders and abettors. Rule 65(d) does not require that we devise a new

26

category of liability—aiding and abetting to two degrees—that is unknown to our law.

Indeed, the Attorney General's theory requires an even greater departure from the law of aiding and abetting. Under the Attorney General's theory, Havens would be simultaneously aiding and abetting Jost and aided and abetted *by* Jost. Yet "[i]n order to aid and abet another to commit a crime it is necessary that a defendant 'in some sort associate himself with the venture, that he participate in it as in something that he wishes to bring about, that he seek by his action to make it succeed.'" *Nye & Nissen v. United States*, 336 U.S. 613, 619 (1949) (quoting *United States v. Peoni*, 100 F.2d 401, 402 (2d Cir. 1938) (L. Hand, J.)). So if Jost violated the injunction, that means she "associate[d] [herself] with" Havens's "venture." *Peoni*, 100 F.2d at 402. Holding Havens liable for aiding and abetting Jost for aiding and abetting *him* would thus conflict with the principle that "one cannot aid or abet himself." *United States v. Bowens*, 907 F.3d 347, 351 (5th Cir. 2018) (alteration omitted) (quoting *United States v. Shear*, 962 F.2d 488, 495 n.10 (5th Cir. 1992)).[18]

---

[18] *See United States v. McCoy*, 995 F.3d 32, 58 (2d Cir. 2021) ("For the aiding-and-abetting theory of liability to apply, the underlying federal crime must have been committed by someone other than the defendant."), *judgment vacated on other grounds*, 142 S. Ct. 2863 (2022); *United States v. Teffera*, 985 F.2d 1082, 1086 n.3 (D.C. Cir. 1993) (noting that "[t]he technical elements of aiding and abetting" include "commission of the substantive offense by someone else"); *United States v. Walden*, 464 F.2d 1015, 1020 (4th Cir. 1972) ("By definition accessories cannot alone commit a crime. At least one principal is essential, and when all who allegedly participate are in fact principals there is a degree of absurdity in proceeding against them all as accessories for purposes of choice of jurisdiction."); *United States v. Morris*, 612 F.2d 483, 496 (10th Cir. 1979) (noting that because the substantive offense "required the participation of at least five persons," it "necessarily follows that an aider and abettor could not be counted as one of the required

Rule 65(d) establishes a general rule that nonparties may not aid and abet named parties to violate an injunction. That general rule does not require us to hold that Rule 65(d) creates aiding-and-abetting liability for every aspect of every injunction a district court might devise. When an injunction prohibits the named party from aiding and abetting nonparties, Rule 65(d) does not create an additional layer of aiding-and-abetting liability for nonparties, especially when the nonparty is the principal actor in the underlying conduct.[19] We apply Rule 65(d) with a "presumption favoring retention of long-established, familiar principles." *United States v. Federative Republic of Brazil*, 748 F.3d 86, 95 (2d Cir. 2014). To the extent an injunction seeks to depart from those principles by proscribing third-party conduct through an "aiding and abetting" provision, those words "add[] nothing to the decree." *Alemite*, 42 F.2d at 833.

We find additional support for this conclusion in the specificity requirement of Rule 65(d). If we were to recognize a new category of

five persons"); *Morgan v. United States*, 159 F.2d 85, 87 (10th Cir. 1947) ("[O]ne cannot be an aider and abettor of himself in the commission of an offense.").

[19] The dissenting opinion attempts to reformulate the recursive aiding-and-abetting theory into a conspiracy between Havens and Jost to violate the injunction. *See post* at 13-14. Both the Attorney General and the City rely only on an aiding-and-abetting theory. *See* Attorney General Br. 20; City Br. 5. Neither has argued that Rule 65(d) incorporates conspiracy principles or that Havens and Jost conspired to have Havens enter the buffer zone for the purpose of violating the injunction. *See United States v. Sineneng-Smith*, 140 S. Ct. 1575, 1579 (2020) ("[W]e rely on the parties to frame the issues for decision.") (quoting *Greenlaw v. United States*, 554 U.S. 237, 243 (2008)); *see also Acosta v. Artuz*, 221 F.3d 117, 122 (2d Cir. 2000) ("Generally, courts should not raise *sua sponte* nonjurisdictional defenses not raised by the parties."). Nor does the complaint allege facts that would establish such a conspiracy.

28

aiders and abettors of aiders and abettors, and if we were to apply that category recursively as the Attorney General suggests, the enforcement of the Arcara Injunction against Havens would violate Rule 65's command that an injunction "must … describe in reasonable detail" the "acts restrained or required." Fed. R. Civ. P. 65(d)(1)(C). "Rule 65(d) is satisfied only if the enjoined party can ascertain from the four corners of the order precisely what acts are forbidden or required." *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 144 (2d Cir. 2011) (internal quotation marks omitted); *see also Schmidt v. Lessard*, 414 U.S. 473, 476 (1974) ("[B]asic fairness requires that those enjoined receive explicit notice of precisely what conduct is outlawed."). Commanding Havens not to aid and abet Jost to aid and abet himself does not provide "reasonable" detail about what acts are forbidden. Aiding and abetting a party to aid and abet oneself is such a novel and attenuated concept that it cannot provide the notice that Rule 65(d) requires.

**2**

Even if we were to assume that the Attorney General's recursive theory were viable and that Jost violated the Arcara Injunction by assisting Havens, the complaint still does not establish that Havens accepted her assistance "for the benefit of, or to assist," Jost in violating the injunction. *Arista Records*, 122 F. Supp. 3d at 36. The complaint alleges that Havens began sidewalk counseling within the buffer zone without knowledge of the Arcara Injunction, twelve years after its entry, and independent of any enjoined party, including Jost. Havens later conducting training sessions at a facility Jost allowed him to use does not transform his independent sidewalk-counseling conduct into an aiding and abetting of Jost. To the extent that the Attorney General's argument focuses on Havens's specific conduct of accepting Jost's offer of the facility—as distinct from his

sidewalk counseling in the buffer zone—that conduct does not establish active concert because it does not violate the Arcara Injunction to conduct training sessions at a location far from the buffer zone. To be in active concert or participation with Jost, Havens would have had to undertake the prohibited conduct—entering the buffer zone—in order to assist Jost. Nothing in the complaint suggests that he did.[20]

For these reasons, we reverse the district court's dismissal of Havens's complaint.

## C

One more aspect of the Arcara Injunction requires our attention. The injunction purports to bind persons "known and unknown" who "act in concert with the [named defendants] to

---

[20] The Attorney General further argues that Havens and ROC are "legally identified" with the parties to the Arcara Injunction. Attorney General Br. 28-31. As proof of this shared identity, the Attorney General points to (1) facts that are not alleged in Havens's complaint—Jost allowing Havens to use Focus Pregnancy Center for his trainings and the enjoined party's promoting Havens's activities—and (2) the shared pro-life goals of Havens and the enjoined parties. But shared legal identity requires a legal relationship, not simply some mutual assistance and shared goals. *See Operation Rescue Nat'l*, 80 F.3d at 70-71 (holding that a "successor" organization with "a substantial continuity of identity" was legally identified with its predecessor); *John Wiley & Sons, Inc. v. Book Dog Books, LLC*, 327 F. Supp. 3d 606, 638 (S.D.N.Y. 2018) (holding that there was sufficient legal identity when one entity "owns and/or controls all twenty-five entities that Plaintiffs seek to enjoin"); *Quinter v. Volkswagen of Am.*, 676 F.2d 969, 972 (3d Cir. 1982) (holding that an expert witness and consultant was the enjoined party's "agent" and for that reason "legally identified" with the enjoined party). Neither the factual allegations of the complaint nor the additional facts on which the Attorney General relies demonstrate that Havens is legally identified with the enjoined parties.

engage in, or who will engage in, the conduct complained of" in the injunction. App'x 19-20. The City argues that this language means that the injunction is "global in scope and applies to [Havens] directly." City Br. 5. That is incorrect. The reference to unknown persons in the Arcara Injunction cannot "enlarge its scope beyond that defined by the Federal Rules of Civil Procedure." *Regal Knitwear*, 324 U.S. at 14.[21] As we have explained, Havens may not aid and abet a named party in violating the injunction and may be held in contempt for doing so. Fed. R. Civ. P. 65(d). That does not mean that Havens may retroactively be added to the list of permanently enjoined parties. *See Additive Controls*, 96 F.3d at 1395-96 ("Having a relationship to an enjoined party of the sort set forth in Rule 65(d) exposes a non-party to contempt for assisting the party to violate the injunction, but does not justify granting injunctive relief against the non-party in its separate capacity.").

The City's argument contradicts the principle that "everyone should have his own day in court." *Richards*, 517 U.S. at 798. A court "cannot lawfully enjoin the world at large, no matter how broadly it words its decree. … It is not vested with sovereign powers to declare conduct unlawful; its jurisdiction is limited to those over whom it gets personal service, and who therefore can have their day in court." *Alemite*, 42 F.2d at 832-33.

The argument also would lead to a perverse result. Havens's alleged conduct—peaceful sidewalk counselling within the fifteen-foot buffer zone—does not violate FACE. If Havens were a party to

---

[21] We think it is likely that the injunction's reference to unknown persons was directed at individuals who were engaged in relevant conduct at the time the original complaint was filed but whose identities were not known. Havens could not have been part of that group.

31

the original action, he would have had the opportunity to argue that the district court could not enjoin him because his conduct did not violate the statute. Indeed, this court vacated the order of injunction as applied to Warren for that exact reason. We held that the district court's "limited findings d[id] not support" its conclusion that Warren "likely violated—or threatened to violate" FACE. *Operation Rescue Nat'l*, 273 F.3d at 197. We explained that the district court's finding that "Warren entered the Planned Parenthood Rochester buffer zone" was not a sufficient ground for enjoining him because "[m]ere presence within a buffer zone is not enough for finding a F.A.C.E. violation." *Id.* at 199. We reject the argument that the district court could have applied the injunction to Havens "directly" twelve years before he approached the buffer zone. City Br. 5.

## D

We next address the district court's denial of Havens's motion for a preliminary injunction. We review a denial of a preliminary injunction for abuse of discretion. *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 238 (2d Cir. 2016). "A district court has abused its discretion if it has (1) based its ruling on an erroneous view of the law, (2) made a clearly erroneous assessment of the evidence, or (3) rendered a decision that cannot be located within the range of permissible decisions." *Warren v. Pataki*, 823 F.3d 125, 137 (2d Cir. 2016) (quoting *Lynch v. City of New York*, 589 F.3d 94, 99 (2d Cir. 2009)). We review *de novo* the district court's resolution of questions of law implicated in a request for a preliminary injunction. *Lusk v. Village of Cold Spring*, 475 F.3d 480, 484 (2d Cir. 2007).

In denying Havens's motion, the district court abused its discretion. First, the district court decided that the motion was moot given the dismissal of Havens's complaint. Because we have

concluded that the dismissal was erroneous, so too was the holding of mootness. Second, the district court's legal reasoning regarding "active concert or participation," on which it relied to deny the motion, was inconsistent with the requirement that Rule 65(d) requires a showing that the challenged action of the nonparty was taken for the benefit of, or to assist, a party subject to the decree in violating that decree. The district court instead decided that it was of "no moment" whether Havens acted "for the purpose of aiding and abetting a violation of the Arcara Injunction" because "the Court's focus is on the actuality of concert or participation." *Havens*, 435 F. Supp. 3d at 507. That was erroneous because the actuality of concert or participation depends on whether the nonparty acted to benefit or to assist the named party.

The Attorney General argues that the evidence it submitted in opposition to Havens's preliminary injunction motion reveals that Havens acted in active concert with parties to the Arcara Injunction and as a result he cannot establish a likelihood of success on the merits. We do not decide whether that evidence justifies the denial of Havens's motion for a preliminary injunction. We are "a court of review, not of first view." *Decker v. Nw. Env't Def. Ctr.*, 568 U.S. 597, 610 (2013) (quoting *Ark. Game and Fish Comm'n v. United States*, 568 U.S. 23, 37 (2012)). The district court may consider this evidence on remand under the correct legal standard. In doing so, the district court should determine whether the parties have demonstrated "a clear or substantial likelihood of success on the merits." *N. Am. Soccer League, LLC v. U.S. Soccer Fed'n, Inc.*, 883 F.3d 32, 37 (2d Cir. 2018) (quoting *NYCLU v. N.Y.C. Transit Auth.*, 684 F.3d 286, 294 (2d Cir. 2012)). To that end, it may consider evidence—such as the news reports referenced in Havens's complaint—that was not properly before it at the motion-to-dismiss stage. *See Mullins v. City of New York*, 626 F.3d

47, 52 (2d Cir. 2010) (noting that courts at the "preliminary injunction stage may rely on otherwise inadmissible evidence") (internal quotation marks omitted). The parties may also wish to supplement the record.

We vacate the district court's denial of the motion for a preliminary injunction and remand for consideration of that motion consistent with this opinion.

## CONCLUSION

A person who is not a named party to an injunction is bound by the injunction only when legally identified with an enjoined party or when aiding and abetting an enjoined party's violation of the injunction. The allegations in Havens's complaint do not establish that he meets this standard. For that reason, the complaint states a claim for declaratory relief that the defendants' threatened enforcement of the Arcara Injunction against Havens and ROC lacked a legal basis. We reverse the judgment of the district court insofar as it dismissed Havens's complaint and vacate the judgment insofar as it denied Havens's motion for a preliminary injunction. We remand for further proceedings consistent with this opinion.

LOHIER, *Circuit Judge*, dissenting:

Federal district court injunctions are not to be trifled with. The permanent injunction at issue here, named the "Arcara Injunction" after the federal judge in the Western District of New York who initially imposed it, prohibits named parties and those who act on their behalf from doing several things in or near reproductive healthcare clinics. They cannot trespass on them, impede or obstruct access to them, physically abuse or harass persons entering or leaving them, make excessively loud sounds that would disturb their patients or employees, vandalize them, be present within a fifteen-foot buffer zone surrounding them, or aid and abet in any manner others from taking any of those actions.[1] The injunction itself, though broad, is not challenged on appeal

---

[1] Here is the actual relevant language of the Arcara Injunction:

> [D]efendants; the officers, directors, agents, representatives of defendants; all other persons whomsoever, known or unknown, acting in defendants' behalf or in concert with defendants; and any persons present protesting against defendants' activities, and receiving actual or constructive notice of this Order, are:
>
> > 1. Enjoined and restrained from: . . . demonstrating, congregating, standing, sitting, or lying on, or posting or carrying signs, or being present within fifteen feet of either edge of any doorway, walkway or driveway entrance to any [facility providing reproductive health care services in the Western District of New York];
> > . . . .

1

and is, everyone agrees, perfectly lawful.[2]

In most cases, the party aggrieved by the breach of an injunction initiates suit. Here, though, the appellant, Jim Havens, an anti-abortion protestor who is neither an aggrieved nor a named party to the injunction, moved first by filing a complaint. As the District Court (Larimer, J.) noted, Havens admits in his complaint to conducting training sessions at Focus Pregnancy Help Center, which is run by its founder, Mary Jost, another anti-abortion protestor who is a named party to the injunction. Jost and Focus were not shy about their association with Havens and his followers. For example, Havens's complaint specifically mentions the "Focus Pregnancy Help Center's website promoting a Jim Havens and Sidewalk Advocates for Life protest outside Planned

---

> 4. Are further enjoined and restrained from inducing, directing, aiding or abetting in any manner, others to take any of the actions described . . . above.

Joint App'x 20–23.

[2] The constitutionality of the Arcara Injunction was litigated in the 1990s and early-2000s. See Pro-Choice Network of W. N.Y. v. Project Rescue W. N.Y., 799 F. Supp. 1417 (W.D.N.Y. 1992), aff'd in part & rev'd in part sub nom. Pro-Choice Network of W. N.Y. v. Schenck, 67 F.3d 359 (2d Cir. 1994), aff'd as modified, 67 F.3d 377 (2d Cir. 1995) (in banc), aff'd in part & rev'd in part, 519 U.S. 357 (1997); see also New York ex rel Spitzer v. Operation Rescue Nat'l, No. 99-CV-209A, 2000 U.S. Dist. LEXIS 20059 (W.D.N.Y. July 26, 2000), aff'd in part & vacated in part, 273 F.3d 184 (2d Cir. 2001).

Parenthood on University Avenue." Joint App'x 35. Even though Havens was actively associating with Jost and Focus as part of his protest efforts, his complaint asserts that he is not bound by the injunction, and he seeks a counter-injunction that would allow him to continue to cross the buffer zone and engage in other activity (or help others engage in activity) that the injunction clearly forbids.[3] As the District Court determined, under any fair reading of the complaint now before us, Havens and Jost were "coordinat[ing] [their] activities," Roe v. Operation Rescue, 54 F.3d 133, 140 (3d Cir. 1995), to enable Jost to do through Havens what she could not do directly: cross the buffer zone and encourage others to do the same.

I would affirm the District Court's decision across the board. Based on the allegations in his own complaint, Havens was in "active concert or participation," Fed. R. Civ. P. 65(d)(2)(C), with at least one party named in and enjoined by the injunction. For that reason, the District Court was right to dismiss Havens's complaint. I would also affirm the District Court's denial of

---

[3] The majority opinion notes that Havens also requested nominal damages below and suggests that he is entitled to them. Majority Op. at 9 n.6. On appeal, however, the parties have not raised any arguments pertaining to Havens's claim for or entitlement to nominal damages, so that issue is not before us.

3

Havens's motion for a preliminary injunction as moot or, in the alternative, on the merits. I address both of these issues in turn.

I

A

Federal Rule of Civil Procedure 65(d)(2) provides that an injunction binds only those who have actual notice of the injunction and are (1) "the parties," (2) "the parties' officers, agents, servants, employees, and attorneys," or (3) "other persons who are in active concert or participation" with anyone in the first two categories. The central question in this appeal is whether Havens was in "active concert or participation" with any party to the Arcara Injunction and was therefore also bound by its terms. The answer, in my view, is yes.

A nonparty can be in active concert or participation with an enjoined party when it aids and abets the party's violation of the injunction. See Alemite Mfg. Corp. v. Staff, 42 F.2d 832, 833 (2d Cir. 1930) (L. Hand, J.). Not so long ago we held that a "court's inquiry into the fact of aiding and abetting is directed to the actuality of the concert or participation, without regard to the motives that prompt the concert or participation." Eli Lilly & Co v. Gottstein, 617 F.3d 186, 193 (2d Cir. 2010) (quotation marks omitted). All that a district court needs to

4

consider, in other words, is whether the nonparty "help[s] to bring about . . . an act of [a named] party" that the injunction forbids. Alemite Mfg. Corp., 42 F.2d at 833. Do not listen to what the nonparties say they want; watch what they do. Applied here, it is irrelevant that Havens may have been "independently motivated by [his] political, social, and moral positions on the subject of . . . abortion." N.Y. State Nat'l Org. for Women v. Terry, 961 F.2d 390, 397 (2d Cir. 1992) (ellipsis in original) (quotation marks omitted), vacated on other grounds sub nom. Pearson v. Planned Parenthood Margaret Sanger Clinic, 507 U.S. 901 (1993).

The majority opinion concedes that "motive" is not a relevant factor. See Majority Op. at 16 & n.12. It nonetheless insists that a nonparty's challenged action constitutes active concert or participation if it is taken with the intent to "benefit or to assist [an] enjoined party." Majority Op. at 14. Respectfully, this requirement has no support in any precedent anywhere. No circuit court has held that a nonparty's challenged action must be taken with the intent to benefit or to assist a named party in order to satisfy Rule 65(d). The majority opinion tries to stitch together this novel intent requirement by relying on Arista Records, LLC v. Tkach, 122 F. Supp. 3d 32, 36 (S.D.N.Y. 2015), which itself cites to a

5

Northern District of Ohio case, see Adcor Indus. v. Bevcorp, LLC, 411 F. Supp. 2d 778, 794 (N.D. Ohio 2005), which in turn relies on two decisions from the First and Federal Circuits, see Microsystems Software, Inc. v. Scandinavia Online AB, 226 F.3d 35, 43 (1st Cir. 2000); Additive Controls & Measurements Sys., Inc. v. Flowdata, Inc., 154 F.3d 1345, 1353 (Fed Cir. 1998).[4] Neither of those circuit decisions refers to an intent to benefit or assist a named party. Each stands instead for the uncontroversial and undisputed proposition with which I started, namely, that aiding and abetting is but one way that a nonparty can be in active concert or participation with an enjoined party. See Microsystems Software, 226 F.3d at 43 (noting that being in "active concert or participation" with a party "means, of course, that the nonparty must be legally identified with that [party], or, at least, deemed to have aided or abetted that [party] in the enjoined conduct"); Additive Controls & Measurements Sys., 154 F.3d at 1353 ("Non-parties are subject to contempt sanctions if they act with an enjoined party to

---

[4] The majority opinion asserts that the District Court "acknowledged the appropriate standard" by applying its newfound intent requirement. Majority Op. at 13 n.10. But the District Court actually cited both Eli Lilly and Arista Records to explain that "the Court's focus should be on the "actuality of concert or participation, regardless of a party's motive." Id. at 507 (citing Arista Records, 122 F. Supp. At 38). And its decision focuses entirely on the "actuality" of Havens's conduct. See Havens, 435 F. Supp. 3d at 505.

bring about a result forbidden by the injunction . . . but only if they are aware of the injunction and know that their acts violate [it].").  In any event, <u>Arista Records</u> reconfirms rather than rejects <u>Eli Lilly</u>'s principle that "'a court's inquiry into the fact of aiding and abetting is directed to the actuality of concert or participation, without regard to the motives that prompt the concert or participation.'"  <u>Arista Records</u>, 122 F. Supp. 3d at 37 (quoting <u>Eli Lilly</u>, 617 F.3d at 193).

According to the majority, district courts must now determine whether a nonparty acted with the intent to benefit or assist a named party.  This additional requirement breaks with prior decisions in which we have held that district courts need only decide whether a nonparty aided and abetted a named party in violating an injunction.  <u>See</u> <u>Eli Lilly</u>, 617 F.3d at 193.  We have never required district courts to delve into whether a nonparty acted with the specific intent of benefiting an enjoined party.  Instead, we have instructed courts to consider what the nonparty actually did.[5]

---

[5] In addressing this issue, the majority opinion cites to the Supreme Court's recent decision in <u>Twitter, Inc. v. Taamneh</u>, 143 S. Ct. 1206 (2023), as if to suggest that the decision supports the majority opinion's take on aiding and abetting liability and the intent to benefit requirement.  In fact, however, <u>Twitter</u> does not once mention such a requirement in its lengthy analysis and description of aiding and abetting.  <u>See</u> <u>id.</u> at 1218–23.

Civil aiding and abetting liability arises when one "knows that the other's conduct constitutes a breach of duty" but nevertheless "gives substantial assistance or encouragement to the other so to conduct himself." Restatement (Second) of Torts § 876(b) (Am L. Inst. 1979). Indeed, in defining civil aiding and abetting liability, the Second Restatement of Torts makes no reference to a common law requirement that the aider and abettor act for the principal's benefit. On this point, the Restatement provides a useful illustration. Suppose "A and B participate in a riot in which B, although throwing no rocks himself, encourages A to throw rocks." Id. at cmt. d, illus. 4. Suppose further that "[o]ne of the rocks strikes C, a bystander." Id. B is then subject to civil liability to C for aiding and abetting. See id. As the illustration suggests, B would be liable regardless of whether B encourages A to throw the rock for B's own benefit or for A's benefit.

Requiring no more than a finding that the nonparty has aided and abetted the named party in this way (by encouraging the violation of law), without requiring an additional finding that the nonparty intended to benefit or assist the named party, will not "expand the equity power so broadly 'as to make punishable the conduct of persons who act independently.'" Majority Op. at 20

8

(quoting <u>Regal Knitwear Co. v. NLRB</u>, 329 U.S. 9, 13 (1945)). That is because "[a]iding and abetting a party is <u>not</u> acting independently." <u>Eli Lilly</u>, 617 F.3d at 193 (emphasis added).

The majority opinion's break with precedent is, to say the least, unfortunate and, in my view, unwise. Our inquiry into whether a nonparty aided and abetted an enjoined party has always focused on the acts of the nonparty. This is for good reason. While it is true that a court "cannot lawfully enjoin the world at large," <u>Alemite</u>, 42 F.2d at 832, Rule 65(d) "is designed to codify the common-law doctrine 'that defendants may not nullify a decree by carrying out prohibited acts through aiders and abettors . . . [who] were not parties to the original proceeding,'" <u>Heyman v. Kline</u>, 444 F.2d 65, 65 (2d Cir. 1971) (quoting <u>Regal Knitwear</u>, 329 U.S. at 14 (1945)). The rule serves to promote respect for the injunctive orders of federal courts and to prevent named parties from working with nonparties to flout those orders, which have played such an important role in our Nation's history. Demanding that district courts determine that nonparties act with specific intent to benefit or assist named parties subverts these goals. It allows named parties to dodge injunctions by finding willing

nonparties careful enough to avoid suggesting, in a complaint or otherwise, that they undertook the challenged actions for the benefit of the named party.

B

Applying our binding decisions to the facts of this case makes clear that Havens was in active concert or participation with at least one named party to the Arcara Injunction: Jost. The injunction prohibits named parties from "being present within fifteen feet of either edge of any doorway, walkway, or driveway entrance" to "any facility providing reproductive health care services in the Western District of New York." Joint App'x 20–21. It also prohibits named parties "from inducing, directing, aiding or abetting in any manner, others," including nonparties, "to take [such] action[]." Joint App'x 22.

According to its website, of which we can take judicial notice,[6] Focus was founded and is currently staffed by Jost. See Joint App'x 94. Havens does not

---

[6] My colleagues in the majority resist taking judicial notice of Focus's website, which New York's Attorney General provided and which is currently available online, because it is not an "official government website." Majority Op. at 6 n.4. I disagree. Courts can take judicial notice of "a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Havens does not question the accuracy of or shy away from Focus's website or contest that Jost founded Focus. This Court and district courts in this Circuit have taken judicial notice of non-government websites under similar circumstances. See, e.g., Mirlis v. Greer, 952 F.3d 51, 63 n.11 (2d Cir. 2020); Magnoni v. Smith & Lacquercia, 483 Fed. App'x 613, 616 (2d Cir. 2012); Hesse

10

dispute this basic fact. The complaint alleges that Havens held training sessions on sidewalk counseling at Focus. It further alleges that Havens learned from a reporter that New York's Attorney General had evidence of (1) a Facebook post by Havens promoting one of his trainings at Focus, and (2) a screenshot of Focus's website promoting Havens's protest outside of Rochester's Planned Parenthood.[7]

These allegations support the District Court's conclusion that Havens, the nonparty, was in active concert or participation with Jost, the named party (and, for that matter, Focus, the organization that Jost ran), because Havens "helped to

v. Godiva Chocolatier, Inc., 463 F. Supp. 3d 453, 463 (S.D.N.Y. 2020) (collecting cases); Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC, 127 F. Supp. 3d 156, 167 (S.D.N.Y. 2015) (same). Of course, Focus's website, when considered, powerfully counters Havens's claim that there is no coordination between him and Jost.

[7] Although Havens now attempts to distance himself from the allegations regarding the statements made by the reporter, he failed to raise this argument below, where he argued only that any such evidence did not show that he was in active concert or participation with Jost. Ordinarily, we decline to consider arguments first raised on appeal where, as here, those arguments were available to a party and the party offers no reason for its failure to raise it in the district court in the first instance. See In re Nortel Networks Corp. Sec. Litig., 539 F.3d 129, 133 (2d Cir. 2008). The majority opinion nevertheless takes up Havens's argument—despite its forfeiture below and its abandonment at oral argument on appeal when Havens was specifically asked about the reporter's statements. See Oral Arg. Tr. at 16–17. At the pleading stage, district courts within our Circuit accept as true all factual statements alleged in a complaint, even if they might constitute inadmissible hearsay at some later stage of the proceedings. See, e.g., Thompson v. Booth, No. 16-CV-3477, 2018 WL 4760663, at *5 (S.D.N.Y. Sept. 28, 2018) (collecting cases).

bring about" an "act of a [named] party" that the injunction forbids. Alemite, 42 F.2d at 833. Jost breached the injunction's prohibition against aiding and abetting a violation of the injunction by supporting Havens's efforts to both cross the buffer zone and encourage others to do the same. Meanwhile, by affirmatively accepting Jost's help knowing that she was prohibited from providing it, Havens actively helped Jost circumvent the injunction. After all, had Havens declined Jost's help, she could not have violated the injunction's aiding-and-abetting provision. Because Havens "helped bring about" Jost's violation of the aiding-and-abetting provision, he fell squarely within the scope of Rule 65(d)'s active-concert-or-participation provision. Alemite, 42 F.2d at 833.

The majority opinion's primary response is to label this a "recursive theory of aiding and abetting" that is "inconsistent with Rule 65(d)." Majority Op. at 24. It asserts that "[t]he Arcara Injunction prohibits named parties from aiding and abetting nonparties to engage in certain conduct . . . but . . . cannot thereby prohibit the nonparties from engaging in that conduct." Majority Op. at 25 (citing Dr.'s Assocs., Inc. v. Reinert & Duree, P.C., 191 F.3d 297 (2d Cir. 1999)). This assertion is little more than an attack on the breadth of the injunction, which has been litigated for decades and is no longer a subject of dispute. As I noted

12

above, Havens has never challenged either the injunction or its aiding-and-abetting provision below or on appeal. The issue, first raised by my colleagues in their majority opinion, thus falls well outside the scope of this appeal.

In a similar way, the majority opinion derides the concept of "a category of aiders and abettors of aiders and abettors" as without support in criminal law. Majority Op. at 26. The criminal law concept of aiding and abetting has never defined the scope of what it means for a nonparty to be in "active concert and participation" with a named party under Rule 65(d). But even assuming that the majority opinion is correct to ground its analysis in criminal law, it still fails to recognize Havens's and Jost's conduct for what it is: a conspiracy. Here, two or more persons (i.e., Havens and Jost) have entered into a joint enterprise for an unlawful purpose (i.e., to violate the injunction) with awareness of its general nature and extent. See United States v. Khalupsky, 5 F.4th 279, 288 (2d Cir. 2021). Because Havens is conspiring with Jost, he is in active concert or participation with her for the purposes of Rule 65(d).[8]

---

[8] According to the majority opinion, this basis for affirming the District Court's judgment is unavailable because the parties did not argue it and it thus violates the party presentation rule for us to rely on it. Majority Op. at 28 n.19. As we have often noted, however, "we are not 'hidebound by the precise arguments of counsel.'" United States v. Graham, 51 F.4th 67, 80–81 (2d Cir. 2022) (quoting United States v. Sineneng-Smith, 140 S. Ct. 1575, 1581 (2020)). The principle of party presentation does not

Consider a second illustration. Suppose that A and B participate in the same riot and each now seeks to push a heavy boulder off a bridge onto C's car. Neither is strong enough to do so alone, so they do so together. Under these circumstances, A and B are obviously engaged in a conspiracy to damage C's car. One could, I suppose, refer to this conduct under a "recursive theory of aiding and abetting" or use the "conspiracy" label with which courts are already familiar. Either way, A and B would be in active concert or participation with each other for the purposes of Rule 65(d).

Finally, the majority opinion implies that sidewalk counseling does not necessarily entail crossing the buffer zone. See Majority Op. at 20–21, 29–30. That suggestion conflicts with the complaint, which alleges that Havens has crossed and intends in the future to cross the buffer zone in the course of and as part of his sidewalk counseling. See Joint App'x 10–11. Specifically, the complaint alleges that the particular buffer zone at issue in this case is "very burdensome" because "the sidewalk counselors are unable . . . to have an intimate conversation in close proximity with a woman who is willing to talk to

override the principle that "we may affirm a judgment of the district court on any ground that is directly responsive to an appellant's arguments." Id. at 81. Indeed, we may affirm on any ground fairly supported by the record. Wells Fargo Advisors, LLC v. Sappington, 884 F.3d 392, 396 n.2 (2d Cir. 2018).

14

them," and is "counterproductive to their ability to communicate effectively." Joint App'x 11. At least for Havens, then, crossing the buffer zone forms a core part of sidewalk counseling. Were this not the case, Havens would gain no benefit from sidewalk counseling.

For these reasons, in my view, the alleged coordination between Havens and Jost is enough to subject Havens to the unchallenged terms of the Arcara Injunction as a nonparty. If Havens's conduct fails to qualify as "active concert or participation" under the natural and plain meaning of Rule 65(d), I am not sure what would. We should therefore have affirmed the District Court's dismissal of the complaint.

## II

Although the additional facts developed in the preliminary injunction record confirm that Havens was in active concert or participation with Jost for purposes of Rule 65(d), the majority opinion takes the extraordinary step of reversing the District Court's denial of Havens's motion for a preliminary injunction and in effect enjoining the court from enforcing its own injunction. Reversal now permits Havens to cross the buffer zone with impunity and pursue a range of actions that Jost and other named parties are enjoined from taking.

15

Because I would affirm the District Court's dismissal of the complaint, I would also have denied Havens's motion for a preliminary injunction as moot. But if there were any lingering doubt that Havens is bound by the terms of the Arcara Injunction based on the allegations in his complaint, the preliminary injunction record erases it altogether, and the District Court was right to deny his motion.

"'A preliminary injunction is an extraordinary remedy never awarded as of right.'" UBS Fin. Servs., Inc. v. W. Va. Univ. Hosps., Inc., 660 F.3d 643, 648 (2d Cir. 2011) (quoting Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 24 (2008)). The District Court's decision to deny Havens's motion for a preliminary injunction is subject to a deferential abuse of discretion standard. See N. Am. Soccer League, LLC v. U.S. Soccer Fed'n, Inc., 883 F.3d 32, 36 (2d Cir. 2018). "A party seeking a preliminary injunction must show (1) irreparable harm; (2) either a likelihood of success on the merits or both serious questions on the merits and a balance of hardships decidedly favoring the moving party; and (3) that a preliminary injunction is in the public interest." Id. at 37.

Here, the record developed by the parties after Havens moved for a preliminary injunction shows that Havens was no passive actor. He actively

solicited Jost's assistance by asking her if he could conduct sidewalk counseling trainings at Focus. There is no dispute that Jost then agreed to "host[] sidewalk counseling training sessions at Focus," Havens Reply Br. 19, and that Havens thereafter held trainings at Focus. Jost went so far as to hand Havens the key to Focus for his personal use on days when he was protesting and sidewalk counseling outside of Planned Parenthood. Needless to say, this was a mutually advantageous relationship; Jost benefitted greatly from the arrangement, too. Havens advertised Focus in a television interview and on his personal Facebook page and repeatedly diverted women he met in front of Planned Parenthood to Jost and Focus.

On this record, the District Court acted well within its very broad discretion when it determined that Havens's conduct constituted active concert or participation with named parties to the injunction. For this reason, I would leave undisturbed the District Court's assessment that Havens failed to demonstrate a "likelihood of success on the merits" or even to present "serious questions on the merits." N. Am. Soccer League, LLC, 883 F.3d at 37.

*    *    *

The majority's decision threatens to undermine the authority of federal district courts to enforce their injunctive decrees well beyond the context of anti-abortion protests and sidewalk counseling. As I've said, the decision is unmoored from the text of any rule or statute, and it contradicts a prior precedential decision of this Court. Could things be worse? Well, yes, because the decision also defines "active concert and participation" so narrowly as to render Rule 65(d)(2)(C) practically meaningless. Few bound by an injunctive decree will have much trouble enlisting a nonparty to do what they are unable to do directly. It is unclear to me how district courts will be able to meaningfully enforce their decrees against clever and devoted parties with clever and devoted friends.

For these reasons I respectfully dissent.

18